UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT J. MEYER,                    :
                                    :    Civil Action No. 05-4076(JLL)
              Petitioner,           :
                                    :
         v.                         :    **OPINION**
                                    :
STATE OF NEW JERSEY, et al.,        :
                                    :
              Respondents.          :

**APPEARANCES:**

    ROBERT J. MEYER, Petitioner <u>pro</u> <u>se</u>
    #097
    Special Treatment Unit
    P.O. Box 699
    30-35 Hackensack Avenue
    Kearny, New Jersey 07032

    DAVID L. DACOSTA, ESQ.
    Office of the New Jersey Attorney General
    Department of Law & Public Safety
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Respondents

**LINARES**, District Judge

This matter is before the Court on <u>pro</u> <u>se</u> petitioner Robert J. Meyer's petition for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition will be denied.

I.   <u>BACKGROUND</u>

A.   <u>Statement of Facts</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply

reproduce the Appellate Division's factual recitation, as set forth in its July 6, 2004 per curiam Opinion on petitioner's direct appeal from the July 30, 2002 order continuing his commitment under the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 to 30:4-27.38:

> R.J.M.'s history as demonstrated through testimony and other evidence at the commitment hearing was as follows.  On September 4, 1989, he was arrested, and on October 11, 1989, charged with one count of aggravated sexual assault, two counts of sexual assault, and two counts of endangering the welfare of a child.  The charges arose from appellant's sexual assaults of a two-and-one-half-year-old girl and her one-year-old brother.
>
> Appellant had been staying with the children's father at a motel in Somers Point for one month.  The father cared for the children on the weekends that he was not working.  On September 3, 1989, his car had broken down and had to be towed, but the tow truck driver would not allow the children in the truck.  The father left them with the appellant for approximately two-and-one-half hours.  When he returned, he found blood on his daughter's panties when he took her to the bathroom.  She said that appellant had hurt her.  The father took the girl to the hospital the next day.  Appellant was arrested and admitted to digitally penetrating the girl while masturbating.  He told police that he also had fondled the boy.
>
> Appellant pled guilty to one count of aggravated sexual assault and was sentenced to sixteen years at Avenel, with a six-year parole disqualifier.
>
> Appellant had also been convicted in 1981 as a twelve-year-old juvenile offender because he had molested his three-year-old niece over a three year period.  In 1984 he was convicted of taking indecent liberties with a six-year-old boy and sentenced to three years incarceration in North Carolina.  His next offense was the 1989 incident in New Jersey.  Appellant admitted, however, to approximately sixty victims, male and female, ranging in age from one to fifteen years old.

Appellant related to various psychiatrists that he had been raped by a family friend several times beginning at age eleven, and then abused by his brother-in-law each weekend for three years beginning at age twelve.  His brother-in-law paid him for oral sex and intercourse and threatened him. Appellant reported being molested by a half-brother and another family in-law while in his teens.

A May 12, 2000 termination report from Avenel indicated appellant had "poor institutional adjustment," incurring forty-one disciplinary charges that included charges of aggressive behavior.  Appellant was in "treatment refusal status" from April 1997 to June 1999.

Kern[1] diagnosed appellant with pedophilia, impulse control disorder, a personality disorder NOS(Not Otherwise Specified), and excessive use of alcohol and marijuana, which lowered his resistance to impulses.  At the STU, appellant refused to take the Prozac that had been prescribed for him.  Appellant had made only "minimal progress" while there.  He attended only half the sessions and group meetings and had shown no enthusiasm or interest in his treatment.  He required "very intensive treatment over a long period of time" to alleviate his pedophilia but treatment would not be effective without his active participation.  He had difficulty following rules and regulations and had a prolonged problem keeping himself and his room clean.  He also continued to smoke in his room, despite the danger.  According to Kern, appellant "does whatever he damn well pleases."

Appellant told Kern that his fantasies were of his wife and former girlfriends, and that he did not think of children in a sexual way.  In Kern's opinion it was highly likely that appellant would reoffend based on his long history of pedophilia, difficulty in interacting with people his own age and resistance to treatment.

The judge noted that appellant "has had sex with children almost all of his life" and that some of his victims were "hardly more than babies."  Appellant's "deeply ingrained and lengthy habit" was "not going to change" absent "long hard treatment."  Appellant's non-compliance with medication and failure to participate in the program in a meaningful

---

[1]  Dr. Stanley Kern, M.D. testified at the commitment proceedings on behalf of the State.

way indicated that he continued to hurt himself, rather than
do "what's in his interest to get better."  Appellant had
not dealt with his own victimization and continued to have
difficulty controlling his behavior.  His history at Avenel
and his current behavior indicated that "his ability to
control himself is highly compromised."

The judge found appellant's difficulty with personal hygiene
and smoking to be "an aggressive act towards others."  She
concluded that appellant's control was "grossly reduced" and
that he suffered from "abnormal mental disorders or
conditions, and personality disorders, which affect[ed] his
volitional, emotional, and cognitive abilities, so as to
predispose him to commit sexually violent acts."

(July 6, 2004 Appellate Division Opinion, at pp. 3-6).[2]

B.  <u>Procedural History</u>

On May 4, 1990, a judgment of conviction was entered against

petitioner, Robert J. Meyer ("Meyer"), pursuant to his guilty

plea, on one count of first degree aggravated sexual assault.

Meyer was sentenced to 16 years in prison, with a six year parole

---

[2]  The Appellate Division's Opinion, as well as other
documents from the relevant state court record are attached to
the Affidavit of David L. DaCosta ("DaCosta Aff."), dated January
6, 2006 and submitted with the respondents' answer.  The DaCosta
Aff. includes the following Exhibits:

Exhibit 1 - July 6, 2004 Appellate Division Opinion
Exhibit 2 - July 30, 2002 Transcript of Commitment Hearing
Exhibit 3 - July 23, 2004 Letter from the Supreme Court of
    New Jersey acknowledging receipt of Meyer's notice of
    petition for certification
Exhibit 4 - August 20, 2004 Final Notice of Deficiency to
    petitioner's counsel for failure to file the proposed
    petition for certification
Exhibit 5 - September 6, 2004 Notice of Motion for leave to
    file petition for certification <u>nunc</u> <u>pro</u> <u>tunc</u>
Exhibit 6 - October 4, 2004 Order granting leave to file
    petition for certification as within time
Exhibit 7 - November 16, 2004 Order of New Jersey Supreme
    Court denying certification

disqualifier, at the Adult Diagnostic and Treatment Center ("ADTC") for sex offenders in Avenel, based on a finding by a clinical psychologist that petitioner's behavior exhibited "repetitive, compulsive elements."  Meyer served almost eleven years of his sentence.

On June 28, 2000, shortly before Meyer's scheduled release from prison, the State filed a petition for involuntary civil commitment of Meyer pursuant to the SVPA, N.J.S.A. 30:4-27.24 et seq.  An Order for temporary civil commitment was entered on July 5, 2000.  A final commitment hearing was scheduled before the Honorable Serena Perretti, J.S.C. on July 25, 2000.  At that time, Meyer was ordered committed for one year.  He had subsequent review hearings on July 26, 2001 and January 29, 2002, at which Meyer stipulated to his continued commitment.

On July 30, 2002, a fourth review hearing was held before Judge Perretti.  Meyer made a motion for a jury trial, which was denied.  At the conclusion of testimony and evidence, Judge Perretti found that Meyer was a sexually violent predator and ordered his continued commitment for one year.[3]  Meyer filed a timely appeal to the Superior Court of New Jersey, Appellate Division.  On July 6, 2004, the Appellate Division affirmed the

_____

[3]  Meyer was scheduled for another review hearing on July 10, 2003, however, that hearing did not occur because petitioner had filed an appeal from the commitment order, which was pending at that time.

trial court's order of commitment.  The New Jersey Supreme Court denied certification on November 16, 2004.

Meyer filed this federal habeas petition on August 16, 2005. An answer to the petition was filed by the respondents on January 9, 2006.  Meyer filed objections to the answer on February 16, 2006.

## II.  STATEMENT OF CLAIMS

In his habeas petition, Meyer raises the following claims for habeas relief:

Ground One: Petitioner was denied his constitutional right to a jury trial in his SVPA commitment proceedings necessary to protect his liberty interest.

Ground Two:  The trial judge relied on petitioner's constitutional right not to be forcefully medicated in deciding his civil commitment under the SVPA.

Ground Three: The State did not prove by clear and convincing evidence that petitioner is a sexually violent predator in need of civil commitment under the SVPA.

Ground Four:  Petitioner was denied effective assistance of counsel at trial and on appeal.

The State answered the petition, arguing that the claims asserted by petitioner are without substantive merit.  A record of the relevant state court record also was provided to the

Court.  Meyer filed a reply in further support of the asserted claims in his petition for habeas relief.

This Court has reviewed the state court record and finds that Meyer has raised all asserted claims before the New Jersey state courts, with the exception of his last ground for relief based on ineffective assistance of counsel.  To the extent that this claim has not been presented, this Court will excuse the exhaustion requirement, as the claim is not meritorious.  See 28 U.S.C. § 2254(b)(2); Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

IV.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

7

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the

8

state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411. See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891. If the federal court determines

that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. <u>Id</u>. AEDPA prohibits such <i>de novo</i> review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. <u>Id</u>. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. <u>See</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 924 (2001);

Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See
also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002)
(Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit
has ruled that this presumption of correctness based upon state
court factual findings can only be overcome by clear and
convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28
U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must
clear a high hurdle before a federal court will set aside any of
the state court's factual findings."  Mastracchio v. Vose, 274
F.3d 590, 597-98 (1st Cir. 2001).

## V.   ANALYSIS

### A.   Right to a Jury Trial

Meyer first asserts that he has a right to a jury trial.  He
posits several reasons for this claim.  First, Meyer argues that
the New Jersey Constitution, which prohibits jury trials in civil
matters, does not apply to civil commitment proceedings under the
SVPA because such committed persons are being deprived of their
liberty, a fundamental constitutional right.  Civil trials
typically involve monetary or equitable relief between
individuals, not the deprivation of a liberty interest.

11

Meyer further distinguishes general civil commitment statutes from SVPA civil commitment, noting that general civil commitment proceedings address a mentally ill person's incompetency.  He contends that SVPA persons typically are not mentally incompetent.

Next, Meyer argues that SVPA persons "face the deprivation of their liberty potentially for life," a "chilling prospect" that is better committed to a jury.  He notes that only three of the seventeen states with SVPA statutes do not provide a jury trial for commitment proceedings.  Further, under New Jersey's SVPA, only two retired judges preside over all of the SVPA commitment cases and the proceedings are "conducted in secret behind prison walls and rulings are routinely impounded."  Meyer suggests that this structure puts "political pressure" on the assigned judges and makes them "automatically inclined" to commit SVPA offenders.  "A jury would not be burdened with such pressure and would be rationally able to discuss the merits of each individual case."  (Petitioner's Letter Brief in Opposition to Respondents' Answer, Docket Entry No. 11, at pp. 5-8).

Meyer finally contends that denial of a jury trial in his SVPA civil commitment proceedings violates his right to equal protection and due process as guaranteed by the Fourteenth Amendment.  (Docket Entry No. 11, at pp. 8-12).

Meyer raised these arguments in his direct appeal from the July 30, 2002 commitment order.  The Appellate Division rejected this right to a jury trial claim, holding as follows:

> Prior to the commitment hearing under review, appellant requested a jury trial, which the judge denied, finding no constitutional or statutory basis for the claim.  Although R.J.M. presents a lengthy and interesting argument in support of his jury trial contention, the same issue was recently rejected in In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 606-07 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004), and we are not persuaded to depart from that holding.  We comment briefly, however, on one aspect of appellant's jury trial argument.
>
> In Kansas v. Hendricks, 521 U.S. 346, 371, 117 S.Ct. 2072, 138 L. Ed.2d 501, 521 (1997), the Supreme Court upheld the Kansas statute against challenges based on due process considerations, double jeopardy principles and impermissible ex post facto lawmaking.  In recounting the procedural history of the case, the Court observed that the committee has asked for and received a jury trial to determine whether he qualified as a sexually violent predator.  Id. at 354-55, 117 S.Ct. at 2078, 138 L. Ed.2d at 510-11.  And, indeed, Kansas' SVPA does provide for a jury trial.  Kan. Stat. Ann. § 59-29a06.[1] In both the majority and dissenting opinions, the Court's only reference to the statutory provisions for a jury trial were in the context of whether the State's provision of procedural safeguards usually found in criminal trials rendered the proceedings criminal rather than civil. Id. at 364, 380, 117 S.Ct. at 2083, 2090, 138 L. Ed.2d at 516-17, 526.  The Court observed: "That Kansas chose to afford such procedural protections does not transform a civil commitment proceeding into a criminal prosecution." Id. at 364-65, 117 S.Ct. at 2072, 138 L. Ed.2d at 517 (emphasis added).  This statement suggests that the procedural safeguards within the Kansas statutory scheme were a discretionary matter for that State's legislature. At any rate, nowhere does the Court hold that the jury trial provision in the Kansas statute was constitutionally mandated.

---

[1] Recent amendments to the statute did not change the jury trial provision.  2003 Kansas Sess. Laws Ch. 152.

It is undisputed that our statute contains no provision for a jury trial.  Moreover, the statute was enacted in 1998 subsequent to the decision in <u>Hendricks</u>.  <u>L.</u> 1998, <u>c.</u> 71.  Our Legislature thus had the benefit of the Court's opinion and discussion on the provisions of the Kansas statute.  It could have included a jury trial provision in the New Jersey statute, but did not.  Contrary to appellant's contention, the Court never directed that all SVPA statutes must henceforth track each provision in the Kansas statute.

Appellant contends, however, that because a Governor's task force had recommended that New Jersey model its statute on the Kansas SVPA and because in the past we have noted the similarities in the two statutes, our court "should also require our statute to incorporate the same due process protections as the Kansas statute."  Appellant also contends that nine of the twelve states with SVP statutes permit jury trials, although he does not identify which states, aside from Kansas and Washington.

By seeking to have the courts graft onto the New Jersey statute the right to a jury trial, appellant asks us to engage in "the undemocratic process of judicial lawmaking." <u>Dempsky v. Mastropaqua</u>, 242 <u>N.J. Super.</u> 234, 238 (App. Div. 1990).  It is the duty of the judiciary to "interpret a [constitutional] statute as written, not to legislate." <u>Casey v. Brennan</u>, 344 <u>N.J. Super.</u> 83, 125 (App. Div. 2001), <u>aff'd o.b.</u>, 173 <u>N.J.</u> 177 (2002).  The fact that other states have elected to include a jury trial provision in their SVP statutes does not change the language of the New Jersey statute, or render it unconstitutional.  Nor does it provide any authority for a New Jersey court to impose such a provision on our statute.

(Resp. Exhibit 1, July 6, 2004 Appellate Division Opinion, at pp.

8-10).[4]

    It is clear that under New Jersey law, there is no right to

a jury trial in SVPA hearings.  <u>See</u> <u>In re the Commitment of</u>

---

    [4]  This Court notes that the <u>In re Civil Commitment of J.H.M.</u> decision recently was disapproved by the Appellate Division, on other grounds, in <u>In re Civil Commitment of A.E.F.</u>, 377 N.J. Super. 473 (App. Div. 2005).

J.H.M., 367 N.J. Super. 599, 606-08 (App. Div. 2003), certif.
denied, 179 N.J. 312 (2004)(finding that persons subject to
commitment under the SVPA are not entitled to more constitutional
protections than afforded by the statute, and noting that the
SVPA statute does not provide for jury trials), disapproved of on
other grounds in, In re Civil Commitment of A.E.F., 377 N.J.
Super. 473, 493 (App. Div. 2005).

    The United States Supreme Court has not decided the issue of
whether due process requires a jury trial in civil commitment
proceedings,[5] and has not incorporated the Seventh Amendment
right to a jury for such cases.[6]  However, the Supreme Court has
explained that § 2254(d) directs that if a state court "reached a
conclusion 'opposite to that reached by [the Supreme Court] on a
question of law' or confronted 'facts that are materially
indistinguishable from a relevant Supreme Court precedent' and
reached the opposite result, then its decision is contrary to

---

    [5] But see United States v. Sahhar, 917 F.2d 1197, 1206-07
(9th Cir. 1990)(due process does not provide right to jury trial
in civil commitment proceedings), cert. denied, 499 U.S. 963
(1991).

    [6] The Seventh Amendment to the United States Constitution
states: "In Suits at common law, where the value in controversy
shall exceed twenty dollars, the right of trial by jury shall be
preserved, and no fact tried by a jury shall be otherwise
reexamined in any Court in the United States, than according to
the rules of the common law."  The Seventh Amendment right to a
jury trial does not apply to state court proceedings.  See City
of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719
(1999).

clearly established law." <u>Poole v. Goodno</u>, 335 F.3d 705, 708 (8th Cir. 2003)(quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000)).  The Court of Appeals for the Eighth Circuit noted this, and recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  <u>See</u> <u>Poole</u>, 335 F.3d at 710-711.

The Eighth Circuit also pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  <u>See</u> <u>id.</u> at 711 (citing <u>Addington v. Texas</u>, 441 U.S. 418, 431 (1979)).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in <u>Addington</u>, it certainly left it open to states to employ their own preferred procedures.  It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face." <u>Id.</u> at 709.

This Court agrees with the Eighth Circuit; that is, in order to obtain the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, Meyer must demonstrate the state court decision denying his claim that he is entitled to a jury trial "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  28 U.S.C. § 2254(d).  As was the case in the Eighth Circuit, Meyer has not met this standard on this issue.

Therefore, where there is no clearly established Supreme Court law holding that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury trial in such cases, see Poole, 335 F.3d at 710-11, this Court concludes that there is no federal constitutional right to a jury trial in SVP civil commitment proceedings and petitioner's claim for habeas relief will be denied accordingly.

B.  Refusal of Medication as Basis for Commitment Decision

In his next claim for relief, Meyer argues that the trial judge impermissibly relied on petitioner's refusal of medication as a basis for his commitment, which violates his constitutional right against forced medication.

In a lengthy decision read at the review hearing, Judge Perretti noted only once that Meyer's "noncompliance with meds" shows that he refuses help through treatment.  (DaCosta Aff. at Ex. 2, July 30, 2002 Transcript of Proceedings, at 46:10-15).  The judge focused instead on the evidence demonstrating that Meyer was a treatment refuser at the end of his prison term at ADTC in Avenel, his poor attendance at meetings at the STU where Meyer is now committed, and his failure to participate in any meaningful way with recommended treatment.  The court also

17

considered the expert's report and testimony, which stated that Meyer has difficulty controlling his behavior.  This was demonstrated by petitioner's lack of personal hygiene and cleanliness of his room, and his continued smoking that he knows is against the rules.  The court further found that Meyer fits all of the criteria of the SVPA, in that "[h]e suffers from mental and personality disorders, which affect his volitional, emotional, and cognitive abilities, so as to predispose him to commit sexually violent acts.  (Id. 48:22-25).  Based on these factors, the court found that Meyer was highly likely to commit another sexual offense and that he would have serious difficulty controlling sexually violent behavior.  (Id., 44:16-49:7).

This Court finds that the state court record clearly shows that petitioner's refusal of medication was a minor factor in the state court's ultimate decision for his commitment.  The court's decision emphasized Meyer's long history of refusing treatment and poor attendance at counseling and other rehabilitative programs, which strongly indicated that Meyer was highly likely to commit a sexual offense and would have serious difficulty in controlling his sexually violent behavior.

Section 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  This Court finds

18

no clear and convincing evidence offered by petitioner necessary to rebut the trial court's factual determination in this case. The record plainly demonstrates that the issue of Meyer's refusal of medication was a minor factor in the court's determination in contrast to petitioner's general refusal of treatment at ADTC, his lack of attendance at recommended programs and sessions at STU, and his continuing difficulty in controlling his behavior demonstrated by his many infractions at ADTC and his current behavioral problems regarding hygiene and smoking at the STU. Thus, this Court finds that the decision of the state court[7] was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  This ground for habeas relief will therefore be denied.

C.   Commitment Order Supported by Clear and Convincing Evidence

    New Jersey courts have found the "clear and convincing" standard an appropriate standard in civil commitment proceedings and SVPA cases.  See In re Commitment of W.Z., 173 N.J. 109, 133-34 (2002); In re Commitment of J.H.M., 367 N.J. Super. at 607. In fact, the "clear and convincing" standard was approved for

---

[7]   The New Jersey Appellate Division affirmed the decision of the trial court.

19

civil commitment proceedings by the United States Supreme Court in Addington v. Texas, 441 U.S. 418, 432-33 (1979).  In that case, the Supreme Court reasoned that: "the reasonable-doubt standard is inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment."  Id. at 432.

Here, Meyer generally argues that the State did not prove by clear and convincing evidence that he is a sexually violent predator in need of civil commitment.  On direct appeal to the New Jersey Appellate Division, that court found:

> Finally, we reject R.J.M.'s argument that the State failed to prove by the requisite standard of clear and convincing evidence that he is subject to continued confinement under the Act.  Our scope of review is narrow and requires us to give the utmost deference to the reviewing judge's determinations.  In re Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001); In re Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div.), certif. denied, 177 N.J. 490 (2003).  In this case we cannot say that the judge abused her discretion.  J.P., supra, 338 N.J. Super. at 459. Although Dr. Kern's testimony may be reviewed as rather "thin," particularly his substantial reliance on R.J.M.'s "difficulty controlling his behavior" as evidenced by his failure to follow STU rules, the credibility of his opinion was for the trial judge to weigh, and we cannot second-guess her decision simply because it is not as persuasive to us. There was sufficient evidence in the record to support the judge's decision which must, therefore, be affirmed.

(DaCosta Aff. at Ex. 1, July 6, 2004 Appellate Division Opinion at pp.19-20).

Again, this Court is constrained by the federal habeas
statute to apply a "presumption of correctness to the factual
determinations made by the state court."  28 U.S.C.
§ 2254(e)(1).  Meyer has not presented clear and convincing
evidence as required to overcome this presumption as to the state
court's factual findings.  See Duncan, 256 F.3d at 196 (citing 28
U.S.C. § 2254(e)(1)).  Moreover, this Court concludes that Meyer
has not shown, as required by 28 U.S.C. § 2254(d), that the
decisions of the state courts were "contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or that
the courts' decisions were "objectively unreasonable."
Accordingly, this third ground for habeas relief will be denied.[8]

D.   Ineffective Assistance of Counsel Claims

Finally, Meyer claims that his counsel was ineffective in
violation of the Sixth Amendment, because he never raised the

---

[8]  Respondents also argue that State of New Jersey and the
Attorney General are not proper respondents in this habeas
petition, as they are not custodians of Petitioner for purposes
of the habeas statute.  (Resp. Brief in Opposition to the
Petition, Point I, pp. 9-10).  Indeed, the proper respondent in a
habeas petition is the warden of the facility in which the
petitioner is incarcerated.  See Rules Governing Section 2254
Cases, Rule 2, Advisory Committee Notes; see also Yi v. Maugans,
24 F.3d 500, 507 (3d Cir. 1994).  In this case, the proper
respondent is Grace Rogers, the Administrator of the Special
Treatment Unit ("STU") in Kearny, New Jersey, where petitioner
presently is housed.  Thus, all other named respondents will be
dismissed from this action.

21

refusal of medication as the basis for commitment issue on appeal.  He further complains that appointed counsel on appeal failed to comply with the rules for filing a petition for certification with the New Jersey Supreme Court.  Finally, petitioner complains that he had three different attorneys assigned to him during the course of his commitment hearing and appeal process, although he does not allege how this constituted ineffective assistance of counsel.[9]

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting

---

[9]   These ineffective assistance of counsel claims were not presented by petitioner for state court review, and are thus unexhausted.  Nevertheless, because the claims are clearly without merit, the Court will deny them pursuant to 28 U.S.C. § 2254(b)(2).

an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense. Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must evaluate the

23

effect of any errors in light of the totality of the evidence. Id. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. Id. at 697. See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Meyer's claim of ineffective counsel relates to his appellate counsel. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of

24

reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Meyer first complains that his appellate counsel did not raise the issue of his refusal to be medicated as a basis for his commitment on direct appeal.  Assuming arguendo that this failure by counsel constitutes deficient performance, Meyer cannot demonstrate prejudice.  The trial court placed little emphasis or weight on Meyer's refusal to take medication in reaching her determination that he should be civilly committed.[10] Judge Perretti made only a fleeting comment on this factor in her decision.  (DaCosta Aff., Ex. 2, July 30, 2002 Transcript at 46:11-13).  Her decision was plainly based on other factors demonstrating a likelihood of recidivism.  (Id., 44:1-49:9). Thus, even if counsel had raised this argument on appeal, it is unlikely that a reversal would have resulted because the

---

[10]   The Court notes that trial counsel attempted to validate Meyer's refusal of medication at the civil commitment proceeding. Trial counsel cross-examined the expert witness, Dr. Kern, regarding Meyer's refusal of medication.  Dr. Kern testified that Meyer refused the first medication because of its feminization effect.  Meyer also refused Prozac because he thought it had no effect on him at all.  However, while Dr. Kern agreed that a patient should have the choice whether or not to take a medication, he opined that petitioner's refusal showed his noncompliance with treatment.  (DaCosta Aff., Ex. 2, July 30, 2002 Transcript 26:5-30:7).

appellate court deferred to the trial court's factual
determination which clearly was based on other factors than
petitioner's refusal of medication.

Respondent also argues that Meyer's refusal to take
medication is a relevant factor in determining whether he would
be highly likely to commit further sexual offenses, thus the
issue is frivolous and a different outcome on appeal would have
been unlikely.  This Court agrees.  Moreover, the record shows
that this factor had little weight or impact in the state court
decision, making a different outcome on appeal improbable.
Accordingly, this claim will be denied for lack of merit.

Next, Meyer argues that his appellate counsel was deficient
because he did not timely file a petition for certification with
the New Jersey Supreme Court.  This claim does not state a
constitutional deprivation because no prejudice resulted.  The
New Jersey Supreme Court granted counsel's motion to file the
petition nunc pro tunc, thus curing the procedural deficiency by
counsel.  This claim will therefore be dismissed for lack of
merit.

Finally, petitioner states that he had three different
counsel appointed to him during the commitment proceedings and
appeal process.  He does not allege any facts to show how this
constitutes deficient performance or that he was prejudiced in

26

any way.  Consequently, the claim is without merit and will be denied.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

<u>**CONCLUSION**</u>

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


/s/ Jose L. Linares

DATED: July 26, 2006          UNITED STATES DISTRICT JUDGE